Douglas O. WULFF et al., Petitioners,

v.

TAX COURT OF APPEALS et al., Respondents.

No. 48543.

Supreme Court of Minnesota.

Nov. 16, 1979.

Head & Truhn, Thomas V. Seifert, and Jerome Truhn, Minneapolis, for petitioners.

Warren Spannaus, Atty. Gen., Byron E. Starns, Jr., Chief Deputy Atty. Gen., Richard B. Allyn, Sol. Gen., and Christine M. Luzzie, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Heard before KELLY, TODD and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Petitioners in this case are taxpayers who each own or have an interest in real property in Goodhue County. On June 1, 1977, pursuant to Minn.St. c. 278, they each filed a petition in the District Court of Goodhue County, alleging inter alia, that their property had been unfairly and unequally assessed and improperly classified in violation of Minn.St. 273.13, and that § 273.13 denied them equal protection of the laws. The petitions prayed, among other things, that the court determine the validity of the claims, defenses, and objections, reduce the assessed valuation of the property and the taxes to be paid, and refund excess tax paid. On July 1, 1977, an act became effective amending Minn.St. 271.01. On September 28, 1977, pursuant to this act, Judge Robert J. Breunig signed an order providing that all tax matters currently pending and subsequently filed in the district court of the counties within the First Judicial District under certain enumerated statutes be immediately transferred to the Tax Court. Among the enumerated statutes was Minn.St. c. 278. On November 8, 1977, petitioners' cases were all transferred to the Tax Court by order of the District Judge Raymond Pavlak. Petitioners subsequently filed a request for writ of prohibition, praying that the Tax Court be restrained from hearing and determining their cases or for such other relief as the court may deem just and reasonable.

The issues raised by this appeal are as follows:

(1) May the legislature constitutionally establish the Tax Court, an administrative agency, as the sole arbitrator of tax disputes, subject to judicial review, without encroaching on the power of the judiciary?

(2) Does the legislature's decision, empowering the district courts to transfer tax disputes to the Tax Court for adjudication deprive petitioners of constitutional rights of due process?

Petitioners argue that the existence of the Tax Court, as an independent agency of the executive branch of state government, violates the separation of powers doctrine in Minn.Const. art. 3, § 1. Petitioners base this argument on the premise that the Tax Court is a judicial court which is controlled by the executive branch. In support of this contention, they point out that the Tax Court is called a court rather than a board or commission, has "judges," Minn.St. 271.-01, subd. 1, uses courtrooms of the district court, determines appeals, makes findings of fact, and issues written orders, § 271.08, subd. 1. In addition, § 271.08, subd. 2, provides that:

"Upon the filing of the order of the tax court of appeals * * * judgment shall be entered thereon in the same manner as in the case of an order of the district court."

■ We must note at the outset that nomenclature is not determinative. The names of the various administrative agencies in the state change with regularity, and with respect to its constitutionality, whether the Tax Court is called a court, a board, an agency, or a commission seems to us less important than a critical analysis of its function in conjunction with an examination of the doctrine of separation of powers. See, *Mulhearn v. Federal Shipbuilding & Dry Dock Co.*, 2 N.J. 356, 66 A.2d 726 (1949).

The separation of powers doctrine, as set out in the constitutions of both the United States [1] and Minnesota [2] has roots deep in the history of Anglo-American political philosophy.[3] Political philosophers such as Locke and Montesquieu were concerned that if all power were concentrated in one branch of the government, tyranny would

---

1. See, U.S.Const. Art. I, § 1; Art. II, § 1; Art. III, § 1.

2. "The powers of government shall be divided into three distinct departments: legislative, executive, and judicial. No person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others except in the instances expressly provided in this constitution." Minn.Const. art. 3, § 1.

3. Parker, *The Historic Basis of Administrative Law: Separation of Powers and Judicial Supremacy*, 12 Rutgers L.Rev. 449, 451–464.

be the natural and probable result. While their formulation of the actual workings of such a balanced government has been altered through the years, the basic principle remains; too much power in the hands of one governmental branch invites corruption and tyranny. Notwithstanding the separation of powers doctrine, there has never been an absolute division of governmental functions in this country, nor was such even intended.[4] As important a figure in the drafting of the Constitution as James Madison stated with regard to the meaning of separation of powers:

> "[I]t can amount to no more than this, that where the *whole* power of one department of the government is exercised by the same hands which possess the *whole* power of another department, the fundamental principles of a free constitution are subverted."[5] (Emphasis in original).

Such a statement presupposes that some functions of one branch may be performed by another branch without subverting the Constitution. That there is some interference between the branches does not undermine the separation of powers; rather, it gives vitality to the concept of checks and balances critical to our notion of democracy.

The rise of the administrative agency in response to the increasing role of government in our society has raised new questions relating to the separation of powers. Because an administrative agency typically exercises many types of power, including some resembling that exercised by the legislative, judicial, and executive branches, a strict interpretation of the separation of powers doctrine would make the existence and functioning of such agencies nearly impossible. On the other hand, a too liberal interpretation could severely undermine the basis of our democratic system.

Courts have often validated the exercise of power by administrative agencies by characterizing it as "quasi-judicial" or "qua-

si-legislative" and permitting a delegation of powers to an agency so long as it was accompanied by adequate standards to act as a check on agency activity. By so limiting the powers of agencies, separation of powers is to some extent maintained. Yet, we are still concerned that continual growth and expansion of these powers may result in a significant impingement on the judiciary branch.

In *Breimhorst v. Beckman*, 227 Minn. 409, 35 N.W.2d 719 (1949), we held that the delegation of adjudicatory powers to an administrative agency, in that case the workmen's compensation commission, was not an encroachment upon the judicial power of the courts (227 Minn. 433, 35 N.W.2d 734):

> "* * * [T]he vesting by the legislature in the industrial commission of quasi-judicial powers—inclusive of the power to determine facts and apply the law thereto * * * is not in violation of state constitutional provisions for the division of the powers of government or for the vesting of the judicial power in the courts, as long as the commission's awards and determinations are not only subject to review by certiorari, but lack judicial finality in not being enforceable by execution or other process in the absence of a binding judgment entered thereon by a duly established court."

We believe that the criteria set out in *Breimhorst* mark the outside limit of allowable quasi-judicial power in Minnesota.

That decision was mandated in great part by the important social issues presented. The critical need for a method of compensating victims of work-related accidents justified the delegation in that case. Such a pressing need is not present here.

■ This case presents additional problems because of the legal effect of Tax Court decisions. Unlike decisions of most administrative agencies, such as the one

---

**4.** 1 Cooper, State Administrative Law 15–16; Davis, Administrative Law Treatise, § 1.09.

**5.** The Federalist, edited by Cooke (Meridian Edition 1961), pp. 325, 326. See, generally, Davis, Administrative Law Treatise, § 1:09; Jaffe, Judicial Control of Administrative Action 28–33.

reviewed in *Breimhorst*, which require judicial enforcement, Tax Court decisions, upon filing, automatically become orders of the court. It is precisely this type of impingement by other branches of government on the judiciary that concerns us.

In view of the aforementioned, we are reticent to approve such a legislative scheme. There are, however, additional factors which influence our decision. One is the unique nature and history of taxation. In *State v. Erickson*, 212 Minn. 218, 225, 3 N.W.2d 231, 235 (1942), we stated:

" * * * Taxation is primarily a legislative function, and the steps taken under the authority of the legislature are administrative in character, in which judicial assistance may be invoked as a matter of convenience, because, with its assistance, the rights of parties and the interests of the public can be best protected and conserved. But the legislature might have authorized such proceedings to be conducted from beginning to end before or by administrative officers or bodies. Such functions are 'not judicial' in the strict sense."

See, *Kalscheuer v. State*, 214 Minn. 441, 444, 8 N.W.2d 624, 626 (1943).

Recognizing that this feature of taxation does distinguish it from many other areas of present or future administrative adjudication, we have more latitude in permitting such a delegation.

Petitioners next direct their attack toward Minn.St. 271.01, subd. 5 (Supp. 1977), which establishes the jurisdiction of the Tax Court. This section reads as follows:

"The tax court shall have statewide jurisdiction. Except for an appeal to the supreme court or any other appeal allowed under this subdivision, the tax court shall be the sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state, as defined in this subdivision, in those cases that have been appealed to the tax court and in any case that has been transferred by the district court to the tax court." [6]

Petitioners assert that Minn.Const. art. 6, § 3,[7] when read together with art. 1, § 8,[8] require the district court to exercise its jurisdiction in tax cases. From this they reason that any provision purporting to allow a transfer to the Tax Court must be void.

Minn.Const. art. 6, § 3, provides that "The district court has original jurisdiction in all civil and criminal cases * * *." However, it is clear that courts of general jurisdiction have the power in certain cases to decline to exercise rightful jurisdiction. The doctrine of *forum non conveniens* is an example of this power. *Willoughby v. Hawkeye-Security Insurance Co.*, 291 Minn. 509, 189 N.W.2d 165 (1971). *Forum non conveniens* is an equitable power which the courts inherently possess. Id. By analogy, then, such a power to decline to exercise jurisdiction may be granted by the legislature and accepted as a matter of comity by the district court without involving any greater abdication of jurisdiction than the exercise of *forum non conveniens*.

By providing this power to transfer, the legislature is not encroaching on the original jurisdiction of the district court. Because this power is discretionary, the decision to hear a case or to transfer it is entirely the court's. This legislative grant

---

6. This provision has been clarified by the legislature during its 1978 session. L.1978, c. 672, § 1, reads in part: "Minnesota Statutes, 1977 Supplement, Section 271.01, is amended by adding a subdivision to read:

"Subd. 6. Pending Cases. A case arising under the tax laws of this state, as defined in subdivision 5, which was pending on July 1, 1977 may be transferred to the tax court by the district court in which it was pending."

7. Minn.Const. art. 6, § 3, provides: "The district court has original jurisdiction in all civil and criminal cases and shall have appellate jurisdiction as prescribed by law."

8. Minn.Const. art. 1, § 8, provides: "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws."

takes nothing from the district court that it does not voluntarily relinquish. At the same time, we find no violation of Minn. Const. art. 1, § 8, since an individual with a tax dispute does not go remediless. A remedy is provided by the tax court, subject to and including judicial review.

In analyzing the framework created by the tax statutes in question, it is crucial to note that the taxpayer always has the option to file in district court. See, Minn.St. 278.01; Note, 4 Wm. Mitchell L.Rev. 371, 406. This is perhaps the saving feature of this statutory scheme. Because the taxpayer has this opportunity to elect a judicial determination, because any transfer to the Tax Court is discretionary with the district court, and because there is always an ultimate check on administrative power in the form of review as of right in this court, we are satisfied that the Tax Court statute does not usurp judicial functions nor deprive taxpayers of constitutional rights. Therefore, in its present form, it is not an impermissible delegation by the legislature.

We are concerned that our decision in this case not be misconstrued. We do not mean to imply by our decision that any and all legislative delegation of judicial power subject to judicial review is constitutionally permissible. We can envision circumstances in which administrative adjudications could constitute an encroachment on the judicial power. As we stated earlier in this opinion, taxation is a peculiar function of the legislature. Solely because of this unique nature and the judicial checks present in this case, we are not disposed to render the Tax Court statute unconstitutional.

The writ of prohibition is accordingly denied.