Jefferey QUAM, Office of Administrative Hearings and Duane R. Harves, Chief Administrative Law Judge, intervenor, Relators,

v.

STATE of Minnesota, Minnesota Zoological Garden, self-insured, Respondent.

No. CO–85–1264.

Supreme Court of Minnesota.

Aug. 8, 1986.

Robert H. Yaeger, Golden Valley, for Jefferey Quam.

Hubert H. Humphrey, III, Atty. Gen., Kathleen M. Mahoney and Sarah G. Mulligan, Sp. Asst. Attys. Gen., St. Paul, for Office of Administrative Hearings.

James F. Cannon, State Atty., St. Paul, for respondent.

## OPINION

WAHL, Justice.

This appeal from a decision of the Workers Compensation Court of Appeals raises the question of whether an attorney should receive immediate payment of fees for legal services rendered in obtaining compensation for permanent partial disability even though payment of such compensation to the employee is deferred. It also raises jurisdictional and substantive issues regarding the award of additional compensation to the employee pursuant to Minn.Stat. § 176.081, subd. 7a(1984). We reverse the decision of the Workers Compensation Court of Appeals insofar as it delayed payment of attorney fees to the employee's attorney. We vacate the decision insofar as it set aside the order of the Chief Administrative Law Judge. We remand the decision for consideration of the order of the Chief Administrative Law Judge on the merits.

Relator, Jefferey Quam, received a respiratory system injury in March 1983 while employed by the Minnesota Zoological Garden ("Zoo"). Employer (a self-insurer) and employee stipulated to partial settlement of Quam's workers' compensation claim; the Zoo agreed to pay temporary total disability benefits, rehabilitation benefits and medical expenses. The stipulation was approved and a hearing was scheduled on the unsettled portion of Quam's claim—that for permanent partial disability. Before the hearing, Quam's attorney wrote to the Zoo offering to settle this remaining claim, but the Zoo did not respond to the offer.

A hearing on the claim for permanent partial disability was held in July 1984. In an order filed July 20, 1984, the compensation judge found Quam 50 percent permanently partially disabled in the body as a whole. Based on this finding, the compensation judge awarded Quam compensation benefits and attorney fees. The order provided that payment of compensation for the permanent partial disability would be with-

held until Quam was entitled to payment in accordance with Minn.Stat. § 176.021, subds. 3 and 3a(1982). The order further provided that attorney fees were also withheld until such time as the compensation benefits were payable to the employee. Quam appealed the portion of the order delaying payment of attorney fees to the Workers' Compensation Court of Appeals ("WCCA"). The Zoo took no appeal from the compensation judge's order.

Meanwhile, Quam, in a letter to Chief Administrative Law Judge Duane Harves ("Chief ALJ") of the Office of Administrative Hearings, sought a modification of the compensation judge's order. Quam requested additional relief under Minn.Stat. § 176.081, subd. 7a (1984). Acting under the authority of Minn.Rules § 1415.3200, subd. 6 (1985), the Chief ALJ determined the preconditions of subdivision 7a had been met and issued an order, filed August 13, 1984, modifying the order of the compensation judge by granting the relief. The Zoo appealed this order on its merits.

The appeals of the July 20, 1984 order of the compensation judge and the August 13, 1984 order of the Chief ALJ were heard and decided together by a five-judge panel of the WCCA. The WCCA upheld the order of the compensation judge withholding payment of fees to Quam's attorney. In considering the order of the Chief ALJ, the WCCA majority concluded the Chief ALJ had no jurisdiction to determine attorney fees in a workers' compensation case and, on this basis, vacated and set aside his order. The case comes before us on a writ of certiorari by Quam. The appeal presents three issues:

(1) whether an injured employee's attorney is entitled to immediate payment of attorney fees awarded once the employee's permanent partial disability has been adjudicated and no appeal taken, even though the payment of the compensation awarded to the employee for this disability is withheld pursuant to Minn.Stat. § 176.021, subds. 3 and 3a(1982);

(2) whether the Workers' Compensation Court of Appeals has statutory authority

to determine that the Chief ALJ lacks the jurisdiction granted the Chief ALJ by Minn.Rules § 1415.3200, subp. 6 (1985) to make factual determinations and apply the penalties of Minn.Stat. § 176.081, subd. 7a(1984); and

(3) whether the pre-hearing settlement offer made by Quam was a reasonable offer within the meaning of Minn.Stat. § 176.081, subd. 7a(1984).

## I.

■ Is an injured employee's attorney entitled to immediate payment of attorney fees awarded once the employee's permanent partial disability has been adjudicated and no appeal taken, even though payment of the compensation awarded to the employee for this disability is withheld pursuant to Minn.Stat. § 176.021, subds. 3 and 3a(1982)? No provision of chapter 176, the Workers' Compensation Act, answers the specific question of the timing of payment of attorney fees when payment of the employee's compensation is withheld. Absent a specific statutory provision, we must determine what the legislature intended in such a case from the language of the Act and from the underlying policies of the workers' compensation system.

In an ordinary tort case, the amount and timing of payment of attorney fees is a matter of contract between client and attorney. In a workers' compensation case, however, no attorney-client fee contract or arrangement is binding. Minn.Stat. § 176.081, subd. 5(c)(1984). Attorney fees in workers' compensation cases are governed entirely by statute. An attorney claiming fees files a statement of attorney fees with the compensation judge and, unless a timely objection is filed, the compensation judge issues an order forthwith granting the fees and awarding the amount requested to the attorney, provided the amount requested does not exceed the limitations in Minn. Stat. § 176.081, subd. 1(1984).

■ Quam's attorney began working on this case in March 1983, brought the case to a hearing, and, in July 1984, received an adjudication for his client of 50

percent permanent partial disability and an award of $57,795.00 in compensation. His request for attorney fees pursuant to section 176.081 was granted, but the compensation judge, affirmed by the WCCA, delayed payment of those fees and of disbursements until the compensation for the permanent partial disability was payable to Quam. The withholding of payment of permanent partial disability compensation to Quam is not challenged.[1] At issue is what effect the withholding of payment of compensation for an adjudicated disability to an employee has on the payment of fees awarded the employee's attorney for the prosecution of a successful compensation claim.

Quam argues attorney fees are due and payable once the employee's permanent partial disability is adjudicated and an award of benefits made. The Zoo contends that attorney fees cannot be paid until the employee's right to receive the compensation out of which the attorney is to be paid has vested and, that the employee's right to receive permanent-partial disability compensation does not vest until the occurrence of one of the events set out in Minn. Stat. § 176.021, subd. 3a(1984).[2] The Zoo goes so far as to argue in its brief that if one of those events does not occur before the employee's death, the employee's right to the adjudicated compensation never vests and the attorney never gets paid.

The Zoo's contention is contrary to the statute. Minn.Stat. § 176.021, subd. 3 (1982) provides that once a right to receive compensation has been adjudicated, the right to payment immediately vests in the employee. *"The right to receive * * * permanent partial * * * disability payments shall vest* in the injured employee or his dependents under this chapter or, if none, in his legal heirs *at the time the disability can be ascertained * * *."* (emphasis added). Thus, while under subdivision 3a the occurrence of certain future events will determine how and when an award of compensation will be paid, the occurrence of these events is not a condition of the employee's right to receive this compensation. Even if the employee dies before any of the events set out in subdivision 3a occurs, the statute provides that

---

1. The compensation to be received by an injured employee is governed by the law in force at the time a compensable injury occurs. *Radermecher v. FMC Corp.,* 375 N.W.2d 809, 814 (Minn.1985). Quam was injured in March 1983; the law in force at the time was Minn.Stat. ch. 176 (1982). The 1982 version of the Workers' Compensation Act provided that where an injured employee was awarded both temporary disability benefits and compensation for permanent partial disability, "[c]ompensation for permanent partial disability shall be withheld pending completion of payment for temporary total and temporary partial disability." Minn.Stat. § 176.021, subd. 3 (1982). When payment of temporary benefits ends, compensation for permanent partial disability becomes due and payable. The manner of payment of the compensation for permanent partial disability—whether in a lump sum or in periodic payments—is set out in Minn.Stat. § 176.021, subd. 3a (1982). If the employee returns to work, completes a rehabilitation plan but cannot find work suitable to his or her condition, retires, or becomes permanently totally disabled, the compensation is to be paid in a lump sum. Otherwise, it is to be paid at the same intervals as temporary total payments were paid. *Id.* Quam's permanent partial disability was adjudicated while he was receiving continuing temporary total disability

payments pursuant to the stipulation. He was, therefore, not entitled to immediate payment of the permanent partial compensation he had been awarded.

2. Subdivision 3a provides:

Payments for permanent partial disability * * shall be made in the following manner:

(a) If the employee returns to work, payment shall be made by lump sum;

(b) If temporary total payments have ceased, but the employee has not returned to work, payment shall be made at the same intervals as temporary total payments were made;

(c) If temporary total disability payments cease because the employee is receiving payments for permanent total disability or because the employee is retiring or has retired from the work force, then payment shall be made by lump sum;

(d) If the employee completes a rehabilitation plan pursuant to section 176.102, but the employer does not furnish the employee with work he can do in his permanently partially disabled condition, and the employee is unable to procure such work with another employer, then payment shall be made by lump sum.

Minn.Stat. § 176.021, subd. 3a (1984).

the employee's heirs are entitled to collect the compensation awarded. "[T]he right [to receive payments] shall not be abrogated by the employee's death prior to the making of the payment." *Id.* Quam's right to compensation vested at the time his disability was ascertained by adjudication, compensation was awarded, and no appeal was taken from that adjudication.

The vesting of the employee's right to compensation creates in the employer a liability for the sum awarded. Because the obligation to immediately pay this amount may exist at the time of the order of adjudication and award,[3] or may arise at any time thereafter, the employer must, from the time of the order, have access to a fund in the amount of that obligation. This fund includes that part of the award earmarked for attorney fees. Thus, if we conclude the legislature intended that the employee's attorney be compensated at the time the right to and amount of compensation is ordered, the delay in payment of compensation to the employee presents no obstacle.

The WCCA decided the attorney fee issue by applying Minn.Stat. § 176.081, subd. 11 (1984). Subdivision 11 provides: "Attorney fees and other disbursements for a proceeding under this chapter shall not be due or paid until the issue for which the fee or disbursement was incurred has been resolved." Interpreting this statute, the WCCA concluded the issue for which an attorney fee or disbursement is incurred is not resolved when the right to and amount of compensation for permanent partial disability is established by adjudication. The WCCA considered payment of attorney

fees premature until the occurrence of one of the statutory conditions of subdivision 3a triggers payment of the compensation to the employee and removes any possible need for future legal services.

We do not agree that this interpretation effectuates the intent of the legislature in enacting subdivision 11. The issue for which the fee was incurred in this case was to determine whether Quam was entitled to permanent partial disability compensation and, if so, the amount of that compensation. By requiring that payment of that compensation to the employee be withheld under subdivisions 3 and 3a, the legislature intended to encourage injured employees to cooperate with medical treatment and rehabilitation efforts so they can get back to work as soon as possible, not to deter counsel from representing those employees by delaying payment of attorney fees indefinitely.[4] We agree with a respected commentator in the workers' compensation field, Professor Arthur Larson, that "[a]s a general matter, the claimant's attorney's fee should be based on the facts as to his services in the compensation case as of the time the services were rendered, and should not be at the mercy of subsequent or collateral events over which he has no control." 3 A. Larson, The Law of Workmen's Compensation § 83.13(i) (1983).

We hold that an attorney representing an injured employee in a claim for permanent partial disability is entitled to payment of attorney fees awarded once the employee's permanent partial disability has been adjudicated and no appeal from that

---

**3.** An employee, for example, who collects temporary total disability benefits for only a short time may already have returned to work at the time of the hearing where permanent partial disability is adjudicated. This employee, in accordance with section 176.021, subd. 3a(a), is entitled to an immediate lump sum payment of the amount awarded for this disability.

**4.** The attorney fee provisions of the Act are intended to encourage attorneys to represent injured workers. Attorneys, faced with paying their own bills, would hesitate to take the cases of seriously injured workers who might not be eligible for early payment of compensation because they could not return to work quickly.

Delaying payment of attorney fees indefinitely would also create a conflict of interest between attorney and client. While it would be in the attorney's interest for the client to return to work as soon as possible so that legal fees could be paid, this early reemployment might not be in the client's best interest. Finally, requiring immediate payment of fees in this case is more fair to the attorney who has achieved successful results for the client. The purpose of section 176.081 is not only to ensure attorneys reasonable fees for their services, *Saari v. McFarland,* 319 N.W.2d 706, 708 (Minn.1982), but also to insure that those fees are timely paid.

adjudication taken, even though payment of compensation awarded to the employee for this disability is withheld pursuant to Minn.Stat. § 176.021, subds. 3 and 3a(1982). In the event further legal services are required to effectuate such payment to the employee, the attorney, whose award has already been paid in full, is ethically obligated to provide such services.

## II.

■ Quam also appeals the decision of the WCCA to vacate and set aside the August 13, 1984 order of the Chief ALJ granting additional relief to the employee under Minn.Stat. § 176.081, subd. 7a(1984). The WCCA did not reach the merits of the award in its decision, but concluded at the outset that the Chief ALJ had no jurisdiction, notwithstanding the grant of such authority by a duly promulgated agency rule, to award attorney fees in a workers' compensation matter.

Quam sought to apply the sanction of subdivision 7a. He claimed he had satisfied the statutory requirements for the award: he had made a timely offer of settlement, this offer was not accepted, and a judgment had been obtained at the hearing that was at least as favorable as the settlement offer. Minn.Rules § 1415.3200, subp. 6 (1985) sets up a procedure to be followed in determining if application of subdivision 7a is justified.[5] The Chief ALJ is to determine if the factual preconditions of the statute have been met and, if so, issue an order. The Chief ALJ concluded

that under the facts of this case, the statutory requirements of subdivision 7a had been met. He modified the decision of the compensation judge by ordering the Zoo to pay an additional 25 percent of the attorney fees of Quam's attorney in excess of $250. The Zoo appealed the merits of the order to the WCCA without raising the issue of the Chief ALJ's jurisdiction. The jurisdiction issue was raised for the first time by the WCCA in its opinion.

The WCCA found the Department of Labor and Industry and the Office of Administrative Hearings had exceeded their statutory authority by promulgating section 1415.3200, subd. 6, granting jurisdiction to the Chief ALJ to determine attorney fees in workers' compensation cases. The WCCA cited statutory provisions in the Workers' Compensation Act that grant authority to award attorney fees in workers' compensation cases to the Commissioner of Labor and Industry, the compensation judge, or the WCCA. *See* Minn.Stat. § 176.081, subds. 1(b) and 2 (1984). The WCCA determined that the Chief Administrative Law Judge could not by rule grant himself jurisdiction that he did not have by statute.

Section 1415.3200, subp. 6 was duly promulgated in accordance with the Minnesota Administrative Procedure Act, Minn.Stat. ch. 14 (1984). A promulgated rule has the force and effect of law. Minn. Stat. § 14.38, subd. 1 (1984). The Office of Administrative Hearings and the Chief ALJ have intervened in this appeal, with our permission, on the limited issue of whether

---

5. Section 1415.3200, subp. 6 provides:

In cases where an offer of settlement has been made in writing under Minnesota Statutes, section 176.081, subdivision 7a, and the offer has not been accepted, upon receipt of the compensation judge's decision, the following procedure must be followed:

A. The party seeking to impose the sanctions of Minnesota Statutes, section 176.081, subdivision 7a, shall file proof of the offer with the chief administrative law judge and serve the other parties within ten calendar days of the date of the compensation judge's decision. The filing must include an order prepared for signature by the chief administrative law judge amending the compensation judge's decision.

B. A party objecting to the entry of the order shall, within five calendar days of receipt of the

proposed order, serve and file an objection, which may be in the form of a letter, stating in detail the reasons why the order should not be signed. A response to the objection, if any, must be filed within five calendar days of the objection.

C. If no objection is received, the chief administrative law judge shall sign, serve, and file the order within ten calendar days of its filing. If an objection has been received, the chief administrative law judge shall rule within ten calendar days after the filing of the objection. Parties do not have a right to a hearing on the objection. The chief administrative law judge's determination must be in writing and is appealable to the court of appeals.

the WCCA, an agency of the executive branch, has the statutory authority to invalidate a rule duly promulgated under the Minnesota Administrative Procedure Act.

■ The WCCA is an administrative agency and the scope of its authority is strictly confined to the jurisdiction granted to it by the legislature. *See Great Northern Railway Co. v. Public Service Commission*, 284 Minn. 217, 220–21, 169 N.W.2d 732, 735 (1969). The legislature defined the jurisdiction of the WCCA as "sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the workers' compensation laws." Minn.Stat. § 175A.01, subd. 2 (1984).

■ In ascertaining the intent of the legislature, we are guided by the presumption that the legislature does not intend to violate the constitution of the United States or of this state. Minn.Stat. § 645.17(3)(1984). Thus, while the statutory grant of jurisdiction to the WCCA is broad, it could not include the power to adjudicate the adherence of agency rules to their statutory parameters. This function is solely within the judicial province and cannot be assumed by an agency tribunal without violating constitutional principles of separa-

tion of powers.[6] The legislature has recognized that the power to review the validity of promulgated agency rules is properly to be exercised by a body of the judicial branch and has granted to the Minnesota Court of Appeals the power to declare administrative rules invalid for, among other grounds, excess of statutory authority. Minn.Stat. §§ 14.44–.45 (1984). The validity of section 1415.3200, subp. 6 was not challenged in the court of appeals and is not, therefore, before us.

The WCCA in this case went beyond the quasi-judicial authority delegated to it to determine facts and answer questions of law as they arise under the Workers' Compensation Act and sought to assume the power to determine the validity of a duly promulgated rule of another agency. It has thereby exceeded the scope of adjudicative power the legislature delegated to the agency consistent with the constitutional doctrine of separation of powers. "[A] determination of an administrative agency is void and subject to collateral attack where it is made either without statutory power or in excess thereof." *State ex rel. Spurck v. Civil Service Board*, 226 Minn. 253, 259, 32 N.W.2d 583, 586 (1948).

We hold the WCCA exceeded the scope of its statutorily delegated authority in va-

---

6. Minn. Const. art. III, § 1. U.S. Const. art. I, § 1; art. II, § 2; art. III, § 1.

We have on more than one occasion precluded agency tribunals from assuming the uniquely judicial power to review the constitutionality of laws. In *In re McCannel*, 301 N.W.2d 910 (Minn.1980), we construed a statutory grant of jurisdiction to the Tax Court. The language of that statutory grant is identical, in relevant respects, to that defining the jurisdiction of the WCCA. In *McCannel*, we held the Tax Court's jurisdiction did not include the power to review the constitutionality of the tax statutes it administered unless the agency acquired jurisdiction by transfer of a case from the district court. *Id.* at 919–20. Likewise, in *Dependents of Ondler v. Peace Officers Benefit Fund*, 289 N.W.2d 486, 487 n. 1 (Minn.1980), we observed, but, because the issue was not before us in that case, did not decide, that it "has generally been thought" the WCCA, as an administrative agency, has no jurisdiction to adjudicate the constitutionality of legislative enactments.

While we have strictly confined the power of constitutional review to the judiciary, we have not found the delegation of quasi-judicial pow-

ers to executive branch agencies—including the power to determine facts and apply the law thereto—to be a violation of the constitutional provision for the separation of the powers of government so long as the determinations of those agencies lack judicial finality and are subject to judicial review. *See Breimhorst v. Beckman*, 227 Minn. 409, 433, 35 N.W.2d 719, 734 (1949) (legislative grant of adjudicative powers to exclusive workers' compensation system upheld against separation of powers challenge); *Mack v. City of Minneapolis*, 333 N.W.2d 744, 752–53 (Minn.1983) (legislative delegation to workers' compensation system tribunals of power to determine and award attorney fees in workers' compensation cases upheld against separation of powers challenge.) We so held in those cases because, as we recognized in *Wulff v. Tax Court of Appeals*, 288 N.W.2d 221, 223 (Minn.1979), "a strict interpretation of the separation of powers doctrine would make the existence and functioning of * * * agencies nearly impossible." We also envisioned, in *Wulff*, however, "circumstances in which administrative adjudications could constitute an encroachment on the judicial power." *Id.* at 225.

cating the order of the Chief ALJ for lack of jurisdiction. That portion of the decision of the WCCA purporting to invalidate Minn.Rules § 1415.3200, subp. 6 (1985) is therefore vacated.

### III.

Our decision on the jurisdiction issue in this case brings us to the merits of the issue raised by the Zoo's appeal to the WCCA—whether Quam's pre-hearing settlement offer met the factual preconditions for application of Minn.Stat. § 176.081, subd. 7a (1984). We conclude this issue must first be considered by the WCCA and we therefore remand the matter to that court for decision.

The decision of the WCCA filed June 12, 1985, is reversed insofar as it delayed payment of attorney fees to the employee's attorney and vacated insofar as it determined lack of jurisdiction of the Chief Administrative Law Judge to apply Minn.Stat. § 176.081, subd. 7a (1984). The August 13, 1984 order of the Administrative Law Judge applying the sanctions of Minn.Stat. § 176.081, subd. 7a (1984) is remanded on its merits to the WCCA for consideration and decision.

Reversed and remanded.