In re Marriage of Sandra
Lee HOLMBERG

v.

Ronald Gerald HOLMBERG.

In re Marriage of Denise M. Kalis–Fuller

v.

Lee V. Fuller.

In re Marriage of Kristi Sue Carlson

v.

Steven Alan Carlson

Nos. C7–97–926, C8–97–1132, C9–
98–33, and C7–97–1512.

Supreme Court of Minnesota.

Jan. 28, 1999.

Susan E. Gaertner, Ramsey County Atty., Theresa J. Walton, Asst. County Atty., St. Paul, for appellant Ramsey County

James C. Backstrom, Dakota County Atty., Jay R. Stassen, Sandra M. Torgerson, Asst. Dakota County Attys., Hastings, for appellant Dakota County.

Michael A. Hatch, Atty. Gen., Kim Buechel Mesun, Asst. Atty. Gen., St. Paul, for appellant/intervenor State of Minn.

Lawrence Crosby, Crosby & Associates, St. Paul, for respondents Sandra Holmberg and Lee Fuller.

Mark A. Olson, Olson Law Office, Burnsville, for respondent Steven Carson.

Amy Klobuchar, Hennepin County Atty., Theresa Farrell-Strauss, Asst County Atty., Minneapolis, for Amicus Curiae Minn. Family Support and Recovery Council.

Robert M.A. Johnson, Anoka County Atty., Janice M. Allen, Asst. Anoka County Atty., Anoka, for Amicus Curiae Minn. County Attys. Ass'n.

Gail Chang Bohr, Children's Law Center of Minn., St. Paul, for Amicus Curiae Children's Law Center.

Julie Brunner, Duluth, for Amici Curiae Assn. of Minn. Counties and the Minn. Assn. of County Social Service Administrators.

Jayne Barnard McCoy, Abigail Turner, Minneapolis, for Amicus Curiae Mid-Minnesota Legal Assistance.

## OPINION

BLATZ, C.J.

The instant case is the consolidation of three appeals to the court of appeals challenging the constitutionality of Minnesota's administrative child support process. This appeal presents the issue of whether the administrative process, Minn.Stat. § 518.5511 (1996), violates the separation of powers doctrine by impinging upon the original jurisdiction of the district court, by creating a tribunal which is not inferior to the district court, and by permitting child support officers to engage in the practice of law. The court of appeals ruled the administrative process unconstitutional, relying on the separation of powers doctrine. We affirm the court of appeals and hold that the administrative process is unconstitutional because it violates separation of powers.

Timely and equitable distribution of family financial resources is needed to protect our children's well-being. Thus, the efficient administration of child support cases is a laudable goal, and one that all three branches of government share. To this end, the legislature has created an expedited administrative process to adjudicate child support cases involving families receiving certain types of public assistance. While evidence of the administrative child support process' efficacy is hotly disputed by the parties, there is no controversy about the importance of streamlining child support mechanisms. Nonetheless, the importance of this shared goal cannot ignore separation of powers constraints.

The current child support process is an outgrowth of Minnesota's response to legislation enacted by Congress. When modifying public assistance laws in 1984, Congress mandated that states create expedited administrative and judicial procedures for procuring, modifying, and enforcing child support orders for people receiving public assistance or seeking government help in enforcing child support orders.[1] While all of Minnesota's counties initially were exempted from certain federal mandates, the state decided to improve child support enforcement efforts by establishing a pilot program.

In January of 1988, Minnesota began an administrative hearing pilot program in Dakota County. Under the pilot program, administrative law judges (ALJs) from the Office of Administrative Hearings presided over hearings relating to child support issues when the Dakota County human services department either was a party or represented a party to the action.[2] While ALJs were empowered to make findings of fact, conclusions of law, and recommendations, only the chief ALJ or his designee could render final decisions and orders. Final orders were treated like final agency decisions, appealable to the court of appeals by certiorari, and were enforceable by the contempt powers of the county or district courts.[3] The statute's enabling language also authorized nonattorney Dakota County employees acting under the supervision of the county attorney to "prepare, sign, serve, and file motions for obtaining, modifying, or enforcing child and medical support orders and maintenance and related documents."[4] These employees, called child support officers (CSOs), could also appear at prehearing conferences and participate in proceedings before an ALJ.[5]

For the next few years, the administrative hearing process underwent annual modification and expansion. In 1989, based both on the success of Dakota County's pilot program and the withdrawal of exemptions from 16 counties by the federal government, the legislature expanded the reach of administrative hearings. The commissioner of human services was authorized to designate counties to implement the administrative program, and ALJs were empowered to hear uncontested parentage cases and issue final decisions without review by the chief ALJ.[6] In 1990, ALJ orders became appealable to the court of appeals in the same manner as district court decisions, rather than by writ of certiorari.[7]

In 1995, the legislature required all counties to create administrative child support processes to resolve child support matters involving the public authority. Matters are tracked as either uncontested or contested proceedings. In uncontested proceedings, which either party can elect to bypass, parties are given 30 days to respond to the public authority's written notice requesting information to prepare a child support order. The public authority then prepares a proposed order for the parties' signatures and the ALJ's ratification. If either party contests the order, the case moves into the contested hearing process.[8]

The contested hearing process is similar to the pilot program described above. CSOs draw up pleadings and appear at hearings without the oversight of a county attorney.[9] While CSOs may seek out county attorneys with questions, the statute bars county attorneys from playing "an active role in the review of information, the preparation of default and consent orders, and the contested

1.  42  U.S.C. § 666(a)(2) (1994).

2.  Minn.Stat. § 518.551, subd.  10 (Supp.1987).

3.  *Id.*

4.  *Id.*

5.  *Id.*

6.  Minn.Stat. § 518.551, subd.  10 (Supp.1989).

7.  Minn.Stat. § 518.551, subd. 10 (1990).

8.  Minn.Stat. § 518.5511, subd. 2 (1996).

9.  Minn.Stat. § 518.5511, subd. 5 (1996). Although Minn.Stat. § 518.5511 was further amended in 1997, this appeal concerns the child support enforcement law in effect between August 1, 1996 and July 31, 1997. Nonetheless, we note that under the 1997 amendment, CSOs may also prepare orders, subpoena witnesses, and

hearings unless the nonattorney employee of the public authority requests the appearance of the county attorney."[10]

In the administrative hearings, ALJs have "all powers, duties, and responsibilities conferred on judges of district court to obtain and enforce child and medical support and parentage and maintenance obligations," including the power to issue subpoenas, conduct proceedings according to administrative rules in district court courtrooms, and issue warrants for failure to appear.[11] In addition, ALJs may modify child support orders, even those granted by district courts.[12] While ALJs cannot preside over contested parentage and contempt proceedings, they can grant stipulated contempt orders and uncontested parentage orders if custody and visitation are also uncontested.[13]

In determining that the administrative child support process was unconstitutional, the court of appeals relied on the separation of powers doctrine. The court of appeals first posited that the executive branch is not to interfere with the courts in their exercise of judicial power.[14] As ALJs are empowered to modify support and maintenance orders originating in district court, the court of appeals stated that the administrative process placed ALJs "in the constitutionally untenable position of reviewing and modifying judicial decisions."[15]

The balance of the court of appeals' decision relied heavily on the seminal separation of powers case *Breimhorst v. Beckman.*[16] Citing *Breimhorst,* the court of appeals stat-ed that an agency's exercise of quasi-judicial power was not unconstitutional as long as the agency's decisions were not only subject to review by certiorari, but lacked judicial finality absent a binding judgment entered thereon by a duly established court.[17] The court of appeals therefore held that the administrative process violated separation of powers by allowing ALJs to make final decisions not subject to district court review and by permitting direct appeal rather than appeal by certiorari.[18]

We granted and limited review in these consolidated cases to the constitutional issues raised by the administrative child support process.

### I.

We first address whether the administrative child support process violates separation of powers. The separation of powers doctrine is based on the principle that when the government's power is concentrated in one of its branches, tyranny and corruption will result.[19] Still, even during the time of the framers, separation of powers did not mean absolute division of our government's functions.[20]

As government has grown larger and more complicated, the separation of powers doctrine has become harder to define. Increased use of administrative agencies has further blurred boundaries between government branches. In validating administrative agencies located in the executive branch, courts have characterized agency actions as

order genetic testing. Minn.Stat. § 518.5511, subds. 1(f), 2(a) (Supp.1997).

10. Minn.Stat. § 518.5511, subd. 7 (1996). In the 1997 amendment, the legislature deleted the language prohibiting county attorneys from playing a role in hearings unless requested, but did not set up any supervisory role for them. Minn.Stat. § 518.5511, subd. 1(h) (Supp.1997).

11. Minn.Stat. § 518.5511, subds. 1(e), 4(d), 4(e), 6 (1996).

12. Minn.Stat. § 518.5511, subds. 1(a), 1(b) (1996).

13. Minn.Stat. § 518.5511, subds. 1(b), 1(e), 4(b) (1996).

14. *Holmberg v. Holmberg*, 578 N.W.2d 817, 821 (Minn.App.1998) (relying on *In re Lord*, 255 Minn. 370, 372, 97 N.W.2d 287, 289 (1959)).

15. *Id.*

16. 227 Minn. 409, 35 N.W.2d 719 (1949).

17. *Holmberg*, 578 N.W.2d at 821 (citing *Breimhorst*, 227 Minn. at 433, 35 N.W.2d at 734).

18. *Id.* at 821–22.

19. *Wulff v. Tax Court of Appeals*, 288 N.W.2d 221, 222–23 (Minn.1979).

20. *Id.* at 223. Indeed, Professor Laurence Tribe suggests characterizing our government struc-

"quasi-judicial" or "quasi-legislative" and mandated stringent standards to check agency activities.[21]

Recognizing the interdependence of the government's branches, we turn to our state constitution's grant of original jurisdiction to the courts. Article VI of our state's constitution states that "[t]he judicial power of the state is vested in a supreme court, a court of appeals, if established by the legislature, a district court and such other courts, judicial officers and commissioners with jurisdiction inferior to the district court as the legislature may establish."[22] It further gives the district courts original jurisdiction in all civil and criminal cases, and appellate jurisdiction as prescribed by law.[23]

■ In determining if the original jurisdiction of the courts is being usurped, we look at the origins of the rights and relief, equitable or statutory, an agency oversees.[24] In *Wulff*, a separation of powers challenge to the tax court, the statutory creation of the tax court was upheld largely because " '[t]axation is primarily a legislative function, and the steps taken under the authority of the legislature are administrative in character, in which judicial assistance may be invoked as a matter of convenience * * *. Such functions are "not judicial" in the strict sense.' "[25] The *Wulff* court determined that the type of function delegated, judicial or legislative, plays a critical role in determining whether an administrative action impinges on the district court's original jurisdiction.

■ Unlike the tax court, the administrative child support process encompasses an area of the law which arises in equity. Family dissolution remedies, including remedies in child support decisions, rely on the district court's inherent equitable powers. Thus, cases involving family law fall within the district court's original jurisdiction.[26] The legislature's delegation of an area of the district court's original jurisdiction calls for this court's close scrutiny.

While not binding on this court, we note that the Nebraska Supreme Court has directly addressed the issue of legislative delegation of a court's equitable powers in *Drennen v. Drennen.*[27] Like the instant case, *Drennen* involved a challenge to Nebraska's expedited child support system. Nebraska's expedited child support system mandated that certain child support cases, which arise in equity, be channeled into an expedited administrative process rather than the district court. The Nebraska Supreme Court first stated that the district court has original jurisdiction over equitable matters, and that the legislature cannot infringe on the district court's equitable jurisdiction.[28] It then held that the expedited system was unconstitutional because the system usurped the district court's original jurisdiction by removing certain child support cases from the district court's jurisdiction.[29]

Similarly, Minnesota's administrative child support process is mandatory for many parties, removing from the district court a class of cases that fall within its original jurisdiction. Further, under Minnesota's administrative process, ALJs are not only given powers which inherently belong to the district court, but they are placed on par with district courts in deciding child support cases. The statute explicitly grants ALJs "all powers, duties, and responsibilities conferred on judges of district court" to handle child support cases.[30] Arguably, ALJs are

ture as one of institutional interdependence rather than functional independence. Laurence H. Tribe, AMERICAN CONSTITUTIONAL LAW § 2–2 (2d ed.1988).

21. *Wulff,* 288 N.W.2d at 223.

22. Minn. Const. art. VI, § 1.

23. Minn. Const. art. VI, § 3.

24. *Cf. Johnston v. Johnston,* 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968) (distinguishing a court's inherent powers to do equity).

25. *Wulff,* 288 N.W.2d at 224 (quoting *State v. Erickson,* 212 Minn. 218, 225, 3 N.W.2d 231, 235 (1942)).

26. *Cf. Johnston,* 280 Minn. at 86, 158 N.W.2d at 254.

27. 229 Neb. 204, 426 N.W.2d 252 (Neb.1988).

28. *Id.* at 259.

29. *Id.*

30. Minn.Stat. § 518.5511, subd. 1(e) (1996).

even superior in some respects as ALJs are empowered to modify child support orders granted by district courts.[31] Finally, ALJ child support orders are given the same deference as district court orders—they are appealable by right and reviewed by the court of appeals under an abuse of discretion standard.

Appellants urge us not to follow *Drennen* and to instead reconsider the separation of powers test set forth in *Breimhorst v. Beckman.* Appellants put forward a reformulation of the separation of powers test which has as its central principles efficiency, public policy, and the availability of judicial review. We decline to limit *Breimhorst* as requested. Such a relaxed test would impinge upon the powers conferred upon the judiciary by the state's constitution. Under appellants' test, it is hard to discern any limiting principle that would not yield to the legislature's sincere efforts to address public concerns with a newly designed, "efficient system" that allows appellate review.

In *Breimhorst,* a challenge to the Workmen's Compensation Commission, the court held that the commission did not violate separation of powers "as long as the commission's awards and determinations [were] not only subject to review by certiorari, but lack[ed] judicial finality in not being enforceable by execution or other process in the absence of a binding judgment entered there-on by a duly established court."[32] *Breimhorst* not only considered the public policy supporting a comprehensive workers' compensation system in its decision, but also insured adequate judicial oversight of the Workmen's Compensation Commission's decisions through their appealability and lack of finality.[33]

The indicia that the *Breimhorst* court utilized in determining whether there was adequate judicial oversight are neither exclusive nor rigid. Rather, the *Breimhorst* court's analysis points to the importance of a flexible review standard when considering whether a statute violates separation of powers. While supreme court decisions following *Breimhorst* have relied, in part, on public policy to affirm legislatively created administrative schemes,[34] they have also been shaped by the existence of adequate judicial checks on administrative actors, the function delegated,[35] ALJ decision appealability,[36] voluntariness of entry into the administrative system,[37] and whether the legislative delegation is comprehensive or piecemeal.[38]

Under the criteria by which our court has measured the constitutional validity of specific statutory schemes, the administrative child support process raises grave separation of powers concerns. With its creation of the administrative process, the legislature has delegated to an executive agency the district

---

**31.** *In re Lord,* 255 Minn. at 372, 97 N.W.2d at 289 (holding "the executive shall have no power to interfere with the courts in the performance of judicial functions"). Appellants' suggestion that ALJs hear "different cases" than district court judges in modification hearings because of the changed circumstances has no basis in Minnesota's laws, and is contradicted by federal law. *Cf.* 28 U.S.C. § 1783A (1994).

**32.** *Breimhorst,* 227 Minn. at 433, 35 N.W.2d at 734.

**33.** *Id.; see also Wulff,* 288 N.W.2d at 223.

**34.** *See Mack v. City of Minneapolis,* 333 N.W.2d 744, 753 (Minn.1983).

**35.** *See Wulff,* 288 N.W.2d at 223.

**36.** *See Mack,* 333 N.W.2d at 752; *Wulff,* 288 N.W.2d at 223. In considering appealability, we consider not only whether ALJ decisions are appealable, but how they are appealable. Appeal to the court of appeals may be granted as a matter of right, using the abuse of discretion standard. Alternately, appeal of most administrative decisions is taken by writ of certiorari, and the court determines only whether the decision was "arbitrary, oppressive, unreasonable, [or] fraudulent." *Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992) (citations omitted); Minn.Stat. § 14.64, 14.69 (1998). While *Breimhorst* relied on the availability of appellate review by certiorari in upholding workers' compensation, either route to review may provide some indication of appropriate judicial oversight of an administrative scheme. However, the availability of judicial review alone will not provide adequate judicial supervision to protect a system against a separation of powers challenge.

**37.** *See Meath v. Harmful Substance Compensation Bd.,* 550 N.W.2d 275, 284 (Minn.1996) (Anderson, Paul H., J., specially concurring); *Wulff,* 288 N.W.2d at 225.

**38.** *See* Minn.Stat. Ch. 176 (1998).

court's inherent equitable power. This delegation infringes on the district court's original jurisdiction. Not only are ALJs given responsibilities and powers comparable to a district court, but ALJs also have the power to modify district court decisions. Finally, although appellants encourage us to rely on the availability of appellate review to conclude that there is adequate judicial supervision of the administrative process, the right to appellate review does not provide sufficient judicial oversight of this mandatory, albeit piecemeal, process. We find their contention particularly troubling in this instance, as many participants in the administrative process lack the resources to mount an appeal.

Closely aligned with our separation of powers concerns is our discomfort with the role and powers of CSOs in the administrative process. Courts regulate the practice of law to maintain discipline over attorneys and to protect the public.[39] "Protection of the public is set at naught if laymen who are not subject to court supervision are permitted to practice law."[40] This court cannot sacrifice its supervisory powers in the pursuit of efficiency.

Under our current statutes, CSOs draft pleadings and appear at hearings to represent the public authority without attorney supervision. A review of the many responsibilities and powers granted to CSOs leads to the inescapable conclusion that CSOs are engaging in the practice of law.[41] By granting the power to practice law to CSOs, over whom the court does not have disciplinary authority, the legislature has further removed the administrative process from the judiciary's supervision.

The administrative child support process' current structure violates the constitutional constraints on separation of powers for three separate and independent reasons. First, the administrative process infringes on the district court's original jurisdiction in contravention of Minnesota Constitution article VI, § 1. Second, ALJ jurisdiction is not inferior to the district court's jurisdiction, as mandated by Minnesota Constitution article VI, § 3. Third, the administrative process empowers nonattorneys to engage in the practice of law, infringing on the court's exclusive power to supervise the practice of law. For these three reasons, we hold that the administrative process violates separation of powers and is unconstitutional. Having reached this ruling on separation of powers grounds, we do not reach the issues of whether the administrative process violates equal protection and procedural due process.

## II.

In nullifying the administrative child support process, we must turn to the consequences of our ruling. Prospective application of a ruling is justified in very limited circumstances.[42] In determining whether to give our ruling prospective application, we consider whether the decision establishes a new principle of law; whether retroactive application will further or retard the operation of the holding in question; and whether retroactive application could produce substantial inequitable results in individual cases.[43]

39. "The power to make the necessary rules and regulations governing the bar was intended to be vested exclusively in the supreme court, free from the dangers of encroachment either by the legislative or executive branches." *Sharood v. Hatfield*, 296 Minn. 416, 425, 210 N.W.2d 275, 280 (1973). In determining whether a nonattorney is engaged in the unauthorized practice of law, the court's abiding concern is protecting the public interest. *Cardinal v. Merrill Lynch Realty/Burnet, Inc.*, 433 N.W.2d 864, 868 (Minn. 1988).

40. *Gardner v. Conway*, 234 Minn. 468, 478, 48 N.W.2d 788, 795 (1951).

41. *In re Discipline of Jorissen*, 391 N.W.2d 822, 825 (Minn.1986) (representing party at workers' compensation hearing and drafting court papers without attorney supervision held to be practice of law). *See Cardinal*, 433 N.W.2d at 870 (Yetka, J., dissenting) (looking at comprehensive scheme of actions undertaken by nonattorneys in determining that nonattorneys were engaged in practice of law).

42. *Turner v. IDS Fin. Serv., Inc.*, 471 N.W.2d 105, 108 (Minn.1991).

43. *Hoff v. Kempton*, 317 N.W.2d 361, 363 (Minn. 1982) (relying on *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)).

Giving our ruling retroactive effect will not protect the principle of separation of powers any more than a prospective ruling. Further, retroactive application will not only swamp the district courts with litigants previously forced to participate in the administrative process, but will also have a negative emotional impact on families whose "final" orders are undone. Such a result would be very disruptive without advancing the separation of powers principle. Therefore, our ruling shall be prospective except as to the parties before us who shall have their cases decided in accordance with this opinion.[44]

We also stay our decision until July 1, 1999, under authority of *Northern Pipeline*.[45] In *Northern Pipeline*, the United States Supreme Court ruled bankruptcy courts unconstitutional under a separation of powers analysis but stayed its decision for over three months to "afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws."[46] In light of the substantial hardship immediate judgment would wreak, we stay our judgment, giving the legislature time to amend the laws in accordance with this decision.

Finally, respondents request attorney fees from the state under the Marriage Dissolution Award of Attorney Fees statute.[47] This statute requires the court to award attorney fees if the fees are necessary to allow a party to continue an action brought in good faith, the party from whom fees are requested has the means to pay the fees, and the party seeking fees cannot pay the fees.[48] However, statutes do not apply to the state unless the state is specifically mentioned or "the words of the act are so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature."[49] As the Marriage Dissolution Award of Attorney Fees statute contains no indication that the legislature meant it to apply to the state, we deny respondents' request for attorney fees.

The judgment of the court of appeals is affirmed. The judgment shall be effective upon entry as to the parties before us. With respect to other parties and cases, the judgment shall not be effective and the administrative child support process shall remain in place until July 1, 1999. This delay will give the legislature an opportunity to modify the system consistent with this decision.

Affirmed and remanded.

---

44. *McGuire v. C & L Restaurant Inc.*, 346 N.W.2d 605, 614 (Minn.1984) (new rule of law applied to parties before court as well as claims arising after date of decision).

45. *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

46. *Id.* at 88, 102 S.Ct. 2858.

47. Minn.Stat. § 518.14, subd. 1 (1998).

48. *Id.*

49. *State v. Bentley*, 224 Minn. 244, 247, 28 N.W.2d 770, 771 (1947) (holding that statute allowing costs on appeal did not apply to the state acting in its sovereign capacity without specific indication that it applied to the state); *see also* Minn.Stat. § 645.27 (1998).