HUDSON, Justice.
*2 We remanded this case to the Minnesota Tax Court in 2015 after concluding that the external-obsolescence calculations made by the tax court in valuing relator Guardian Energy's property were not reasonably supported by the record. Guardian Energy, LLC v. County of Waseca , 868 N.W.2d 253 (Minn. 2015). The tax court then issued a new order in 2016 that again addressed external obsolescence and made findings and conclusions regarding the value of Guardian's property (the "2016 Order"). Before judgment was entered on that order, respondent Waseca County filed a motion that requested correction of computational errors made by the tax court through amended findings. After the County filed its motion, the tax court stayed entry of judgment. Before the tax court ruled on the County's motion, Guardian sought review of the tax court's order in our court. Because we conclude that the County's unresolved motion and the tax court's stay of entry of judgment rendered the 2016 Order not "final" within the meaning of Minn. Stat. § 271.10, subd. 1 (2018), we discharge the writ of certiorari and dismiss the appeal for lack of jurisdiction.
FACTS
In 2009, Guardian purchased an ethanol-production facility located in Janesville. The Waseca County Assessor assessed property taxes based on its estimate of the property's market value for 2009, 2010, and 2011, and Guardian challenged each year's assessment by filing petitions with the tax court. The challenges were consolidated, and in 2014 the tax court issued an order determining the fair market value of the property for each tax year.
Guardian appealed the tax court's order to our court. In 2015, we affirmed the tax court's determination that the property's ethanol tanks were taxable real property, vacated the tax court's valuation determinations because its external-obsolescence calculations were not reasonably supported by the evidence, and remanded the case to the tax court, giving it the option to reopen the record. Guardian Energy , 868 N.W.2d at 261, 267.[1]
After additional proceedings in the tax court, on September 28, 2016, the tax court issued the 2016 Order. The tax court stayed entry of judgment on this order for 15 days-until October 13. On October 13, the County filed a "motion for correction of computational errors," asking the tax court to "amend its findings and conclusions to correct computational errors" so that the judgment would "accurately reflect the market value" of Guardian's property. The County brought its motion under Minn. R. Civ. P. 52.02, 60.01 and Minn. Stat. § 271.08, subd. 1 (2018). See also Minn. Stat. § 271.06, subd. 7 (2018) ("[T]he Rules of ... Civil Procedure for the district court of Minnesota shall govern the procedures in the Tax Court, where practicable."). Guardian opposed the County's *3 motion. On October 31, the tax court stayed entry of judgment "pending further order of the court."
On November 21-after the tax court had stayed entry of judgment but before the County's motion was resolved-Guardian filed a petition for a writ of certiorari with our court. See Minn. Stat. § 271.10, subd. 2 (2018) (directing the petitioner who seeks review of a tax court decision to "obtain from the supreme court a writ of certiorari"). In its accompanying statement of the case, Guardian stated that the 2016 Order disposed of all claims and was a "final order." Acknowledging the County's October motion, Guardian noted that the motion "does not impact the finality" of the 2016 Order. Eleven days later, on December 2, the County filed a notice of related appeal. In its accompanying statement of the case, the County stated that the 2016 Order did not dispose of all claims by and against all parties.
We subsequently stayed further proceedings in this appeal pending entry of final judgment by the tax court.[2] In May 2017, the tax court granted in part and denied in part the County's motion, amending its findings and conclusions in an order that "supersede[d] in its entirety [the] 2016 decision." Another post-order motion followed (as well as mediation). In February 2018, the tax court denied that motion, and in March 2018, Guardian moved to vacate the stay of this appeal. The County then moved to dismiss this appeal, asserting that the tax court's 2017 order expressly superseded the 2016 Order, rendering the appeal of that order moot. We deferred decision on those issues until the time period to appeal the tax court's 2017 and 2018 orders had expired. Guardian Energy, LLC v. County of Waseca , No. A16-1850, Order at 3-4 (Minn. filed Mar. 27, 2018). Neither party appealed from the tax court's 2017 and 2018 orders. We therefore lifted the stay of the appeal of the 2016 Order and directed the parties to address both the merits of the issues presented in their appeals and our "jurisdiction over this appeal in light of the decisions made by the Tax Court after the appeal was filed." Guardian Energy, LLC v. County of Waseca , No. A16-1850, Order at 2 (Minn. filed May 21, 2018).
ANALYSIS
The County moves to discharge the writ of certiorari, arguing that we lack jurisdiction. Specifically, the County contends that the 2016 Order is not a final order because the market values of Guardian's property were not finally determined until February 2018, no appeal has been taken from the 2018 order, and in the absence of finality to the September 2016 Order, we are without jurisdiction to review the merits of the tax court's valuation determinations. Our jurisdiction is a legal question that we determine de novo. In re Guardianship of Tschumy , 853 N.W.2d 728, 734 (Minn. 2014).
The tax court is an administrative agency of the executive branch, whose jurisdiction is created and limited by statute. Beuning Family LP v. County of Stearns , 817 N.W.2d 122, 126 (Minn. 2012). "The doctrine of separation of powers dictates that our jurisdiction to review decisions of the tax court by certiorari is similarly limited by statute." Id. Thus, we must begin with the plain language of the statute *4 that confers our jurisdiction to review decisions by the tax court.
We can review "any final order of the Tax Court." Minn. Stat. § 271.10, subd. 1 (emphasis added). We have said that a final order is " 'the final determination of an inferior tribunal which, if unreversed, would constitute a final adjudication of some legal rights.' " Schober v. Comm'r of Revenue , 853 N.W.2d 102, 108 (Minn. 2013) (quoting Youngstown Mines Corp. v. Prout , 266 Minn. 450, 124 N.W.2d 328, 351 (1963) ). We have declined to exercise our statutory jurisdiction over orders of the tax court that do not finally dispose of all claims or issues in controversy. See, e.g. , Metro. Sheet Metal Journeyman & Apprentice Training Tr. Fund v. County of Ramsey , 832 N.W.2d 844, 848 (Minn. 2013) (concluding that a tax court order that had not resolved the legal right asserted by the taxpayer was not a final order and to conclude otherwise would "undermine[ ] the process the Legislature has designed for the resolution of claims arising under the tax laws"); Beuning Family LP , 817 N.W.2d at 126, 128 (noting that although judgment had been entered, "the order on which review is sought here does not finally adjudicate" the legal rights of the taxpayer or the county, and concluding that the order was not "reviewable under Minn. Stat. § 271.10 because it is not a final order that determines [the taxpayer's] appeal" to the tax court); see also Emme v. C.O.M.B., Inc. , 418 N.W.2d 176, 178 (Minn. 1988) (noting that we have "consistently dismissed appeals from orders that did not finally determine either the action or some positive legal right of the appellant relating to the action"). And we have said that for an order of the tax court to be appealable to this court, it must "finally adjudicate ... whether the taxpayer is entitled to a refund of taxes paid and the amount of any refund ." Schober , 853 N.W.2d at 107 (emphasis added).
Our decisions in Metropolitan Sheet Metal and Beuning Family addressed the final-order rule in the context of interlocutory orders of the tax court, specifically orders on motions to amend, Metropolitan Sheet Metal , 832 N.W.2d at 846, and for partial summary judgment, Beuning Family LP , 817 N.W.2d at 124. And Schober concerned a refund claim, rather than a challenge to the amount of taxes due. 853 N.W.2d at 107. The controlling legal principle in all of these cases, however, has equal force here: to exercise jurisdiction over this appeal, we must first determine whether the 2016 Order finally adjudicated the valuation of Guardian's property.
Guardian asserts that the 2016 Order finally adjudicated its legal rights, despite the County's post-order motion, for three reasons. First, Guardian asserts that the only issue before the tax court on remand was the calculation of external obsolescence, and the County's motion for correction of errors presented a "collateral matter entirely unrelated to [that] issue." Second, Guardian argues that the County's motion requested correction of alleged clerical errors and did not seek amended findings. Thus, Guardian contends, the filing of such a motion does not affect the finality of the 2016 Order. See, e.g ., Minn. R. Civ. P. 60.01 (noting that clerical mistakes can be corrected "[d]uring the pendency of an appeal ... with leave of the appellate court"). Third, Guardian asserts that we "characterized" the County's motion as one for "correction" only, and thus gave the tax court "finite leave" to address only a correction motion.[3]
*5 The County argues that the 2016 Order was not a final order because its post-order motion "put into question the finality of the Subject Property's valuation." Specifically, the County asserts that if the tax court granted its motion, then the court necessarily would have changed the market value of the property, which could change the County's tax assessment and therefore Guardian's tax liability. Additionally, the County argues that the 2016 Order was not final once its motion was filed because, simply stated, issues were still "pending before the agency." See Schober , 853 N.W.2d at 108 (stating that "finality occurs when nothing is still pending before the agency") (citation omitted) (internal quotation marks omitted).
We first consider Guardian's argument that the County's post-order motion raised only a "collateral matter," and thus, the tax court did not have the authority to "supersede" the 2016 Order with the May 2017 Order. We remanded this case to the tax court after the first appeal because the tax court's calculation of external obsolescence was "not reasonably supported by the record as a whole." Guardian Energy , 868 N.W.2d at 266. We have said that external obsolescence is a "form[ ] of depreciation ... that can decrease the market value of a property under the cost approach." Minn. Energy Res. Corp. v. Comm'r of Revenue , 886 N.W.2d 786, 797 (Minn. 2016). Thus, after concluding that the tax court's external-obsolescence calculation was clearly erroneous in Guardian Energy's appeal, we "vacate[d] the tax court's value determinations" for each of the tax years at issue and "remand[ed] for further proceedings." Guardian Energy , 868 N.W.2d at 267. We did not "mandate a particular methodology to apply on remand" because we recognized the "valuation challenges" presented when "calculating external obsolescence." Id .
The County's motion asked the tax court to correct computational errors in the 2016 Order to "accurately reflect the market value" of Guardian's property. In other words, the County's post-order motion questioned the final result of the legal issue before the tax court: the correct valuation of Guardian Energy's property. While the County's motion may not have focused on external obsolescence specifically, the motion went directly to the "determinations" that we had vacated, namely "the valuation of [Guardian's] ethanol plant." Id.[4] With amended external-obsolescence calculations in hand, the tax court turned to the determination that we vacated: the valuation of Guardian's property, *6 which the court addressed in an order that "supersede[d]" the 2016 order by considering "the value ... of Guardian's ethanol production" property, with findings on the "fee simple market value" of that property for each tax year, and conclusions regarding the County's "estimated market value" of this property in each tax year. Rather than raising issues "collateral" to external obsolescence, the County's post-order motion raised issues that called into question the finality of the tax court's decision on the valuation determination that we had vacated and that are necessary to finally resolve Guardian's legal rights regarding the tax assessment for its property.
Next, we consider the nature of the County's motion. In asserting that the County's post-order motion did not affect the finality of the 2016 order, Guardian makes much of the distinction between a motion under Minn. R. Civ. P. 52.02 to amend a court's findings or judgment and a motion under Minn. R. Civ. P. 60.01 to correct clerical errors. Guardian contends that the County made the latter motion, while only the former motion affects the finality of the tax court's order. As support, Guardian cites Minn. Stat. § 271.10, subd. 2 (2018), which effectively tolls the time period in which a party may appeal an order of the tax court while "a motion for rehearing, which includes a motion for amended findings of fact, conclusions of law, or a new trial," is pending. Id. The County's motion, it asserts, was specifically captioned as one to correct clerical errors, not as a motion for amended findings.[5] Guardian also argues that the County's motion could not have been a motion for rehearing because the County did not request a hearing.[6]
We have said that a clerical error subject to correction after a final order or judgment is "usually ... in the clerical work," "one of form," or "one made by the court which cannot reasonably be attributed to the exercise of judicial consideration or discretion." Wilson v. City of Fergus Falls , 181 Minn. 329, 232 N.W. 322, 323 (1930). The County's motion asked the tax court to "amend its findings and conclusions" regarding the substantive legal issue before the court, "the market value" of Guardian's property. This motion affirmatively asked the tax court to exercise its judicial consideration or discretion; it did not seek merely a clerical or form change in the tax court's calculations.[7]
*7 Here, the tax court responded to that motion by staying entry of judgment. Thus, even if the County's motion did not postpone the running of the time to appeal, the tax court's order staying judgment did, because it called into question the finality of the value determinations contained in the 2016 Order. Because that order stayed entry of judgment "pending further order of the court" (emphasis added), there was necessarily going to be another order from the tax court, and the new order, not the 2016 Order, would then be the tax court's "final order."[8]
Guardian also argues that our orders in this appeal, filed before the tax court issued its 2018 order, effectively endorsed the clerical nature of the County's motion. We disagree. We have filed five orders in this appeal since Guardian filed its petition for a writ of certiorari in 2016. Four dealt with staying the appeal until matters pending in the tax court were resolved; the fifth order established a briefing schedule. None of those orders adopted or rejected the County's arguments regarding jurisdiction or the nature of the relief it requested from the tax court. In all of these orders, we simply recited the title of the County's motion; we did not endorse the merits of the motion nor comment on potential relief based on that motion. In addition, when the County moved to dismiss the appeal (albeit on mootness grounds as opposed to the grounds on which we dismiss it today), we specifically said that "[w]e cannot resolve Waseca County's motion ... until the record before the Tax Court is before us." Now that the record is before us, we conclude that we lack jurisdiction over Guardian's appeal.
Finally, our respect for the separation of powers between the branches of government supports our conclusion here. Unlike the district courts, the tax court is not part of the judicial branch; it is part of the executive branch. Due respect for the separate powers of that branch dictates that we not impinge on the tax court's procedures, including its authority to modify its own decisions, so long as those procedures do not "usurp judicial functions nor deprive taxpayers of constitutional rights." Wulff v. Tax Court of Appeals , 288 N.W.2d 221, 225 (Minn. 1979). See generally id. at 224-25 (explaining the limits of the Legislature's ability to grant powers to the tax court). Allowing the tax court to provide a period for post-order motions, then stay entry of judgment when such a motion is filed, and then reconsider its decision as requested in that motion does not impinge *8 on judicial branch authority. The end result of the tax court's considered and deliberate process, as here, is a final order from the tax court from which the parties could appeal. This principle is particularly important here, given that the tax court, sitting as the trier of fact, declared that its May 2017 order "supersede[d]" the 2016 order.[9]
CONCLUSION
For the foregoing reasons, we conclude that the 2016 Order was not a final order at the time Guardian petitioned for a writ of certiorari.[10] Accordingly, because we lack jurisdiction over a non-final order, we grant the County's motion to dismiss, discharge the writ of certiorari issued in this matter, and dismiss the appeal.
Motion to dismiss granted; writ of certiorari discharged and appeal dismissed.
LILLEHAUG, J., took no part in the consideration or decision of this case.

After our decision in that appeal, the Legislature amended the relevant statute to exclude structures used in the production of biofuels from the scope of taxable real property. See Act of May 20, 2014, ch. 308, art.2, § 9, 2014 Minn. Laws 1892, 1893 (codified as amended at Minn. Stat. § 272.03, subd. 1(c)(iii) (2018) ).

While proceedings continued in the tax court, Guardian also filed a motion with our court to "clarify[ ] the jurisdiction of the Minnesota Tax Court." We denied this motion and continued the stay. Guardian Energy, LLC v. County of Waseca , No. A16-1850, Order (Minn. filed Feb. 1, 2017).

Guardian also asserts that we "inherently" rejected the County's argument that Guardian's appeal was premature in light of the County's post-order motion because we did not dismiss this appeal when the County first raised arguments that the appeal was "premature and untimely" or "moot." We did not address the merits of the County's arguments because of timing: we either stayed the appeal or continued the stay when the County requested this relief. In any case, we can raise a question of our jurisdiction on our own, In re Schmidt , 443 N.W.2d 824, 826 (Minn. 1989), and in our order of May 21, 2018, we did so.

The notion that we limited the tax court solely to the calculation of external obsolescence is inconsistent with our refusal to "mandate" the use of a particular methodology on remand. Id. In addition, it is illogical to consider all other valuation elements "collateral" to the external-obsolescence calculation. Real property must be assessed at its "market value." Minn. Stat. § 273.11, subd. 1 (2018). The cost approach the tax court used in its 2017 Order calculates the value of current improvements to the property, "subtracts depreciation" from the current value of the property's improvements to "determine the current value of the improvements, and then adds the value of the land to determine the market value" of the property. Cont'l Retail, LLC v. County of Hennepin , 801 N.W.2d 395, 403 (Minn. 2011). External obsolescence is just one piece of this complex valuation process, not a single factor that can be isolated from the final-valuation determination. See Guardian Energy , 868 N.W.2d at 267.

We note that at a hearing before the tax court in February 2017, Guardian's counsel agreed that the tax court "would need to amend the findings of fact to grant any portion of the County's motion."

At oral argument, the County argued that our decisions in Madson v. Minnesota Mining & Manufacturing Co. , 612 N.W.2d 168 (Minn. 2000), and Rubey v. Vannett , 714 N.W.2d 417 (Minn. 2006), compelled the conclusion that the time limitation for a hearing was a procedural, rather than a jurisdictional issue. Following oral argument, Guardian moved to strike, or in the alternative, supplement its response to this argument, claiming that the County had raised this argument for the first time at oral argument. See Monaghen v. Simon , 888 N.W.2d 324, 334 n.6 (Minn. 2016) (declining to address an issue raised for the first time at oral argument). We disagree. Although the County did not cite Madson or Rubey in its briefing, the County spent four pages of its reply brief arguing that the lack of a hearing does not affect our jurisdiction in a headed section entitled "Guardian Is Wrong When It Argues That the County's Motion Was Not a Motion for Amended Findings of Fact Pursuant to Minn. R. Civ. P. 52.02 Because There was No Oral Argument." Accordingly, we deny Guardian's motion to strike.

We are also unpersuaded by Guardian's argument that the County's motion was not a motion for rehearing because the County declined to schedule a hearing on the motion. Such hearings are a procedural right, which the County was entitled to waive if it thought a hearing was unnecessary. Although Guardian argued at oral argument that the County did not take the appropriate steps to waive its hearing rights, that putative failure (which we express no opinion on) has no bearing on the substance of the County's motion.

We emphasize that the difference between the procedures by which tax court decisions are reviewed and the procedures by which district court decisions are reviewed limits our holding in this case to the certiorari process for review of decisions of the tax court. The time for seeking a writ of certiorari to review the decision of the tax court may run from the "making and filing" of the tax court's final order, which may be a different date from the entry of judgment. See Express Scripts, Inc. v. Comm'r of Revenue , No. A12-1966, Order at 3-4, 2013 WL 310642 (Minn. filed Jan. 18, 2013). In appeals from decisions of the district court, Minn. R. Civ. App. P. 104.01, subd. 1, provides that "an appeal may be taken from a judgment within 60 days after its entry." But even in appeals from a judgment entered by the district court, our rules express a preference for the finality that results when post-judgment motions are resolved before an appeal is underway. See Minn. R. Civ. App. P. 104.01, subd. 2 (explaining that certain post-decision motions toll the running of the appeal period); see also Huntsman v. Huntsman , 633 N.W.2d 852, 855 (Minn. 2001) (stating that "[n]otices of appeal filed before the disposition of post-decision motions are considered premature").

In reaching this result, we do not necessarily condone the post-order process that extended the date of a final order by almost 18 months. But we are confident that the professionalism of the practitioners who appear before the tax court generally ensures that they approach cases with an eye towards achieving the goals of finality and a closure to litigation, and that the tax court has the tools needed to address the rare instances of gamesmanship that may occur.

Based on this conclusion, we do not reach the merits of the issues raised by Guardian in its appeal, nor any substantive, as opposed to jurisdictional, issues presented by the County's cross-appeal.