STATE OF MINNESOTA

IN SUPREME COURT

A24-0170

Tax Court                                                               Moore, III, J.

County of Hennepin

                    Relator,

vs.

Hollydale Land LLC,                                         Filed: February 26, 2025
                                                            Office of Appellate Courts

                    Respondent.

_____

Mary F. Moriarty, Hennepin County Attorney, Shannon M. Harmon, Assistant County Attorney, Minneapolis, Minnesota, for relator.

Adam J. Pabarcus, Timothy A. Rye, Larkin Hoffman Daly & Lindgren, Ltd., Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

1.      Under this court's decision in *Beuning Family LP v. County of Stearns,* 817 N.W. 2d 122 (Minn. 2012), an order of the tax court denying a motion to dismiss for lack of jurisdiction is not immediately appealable as a final order under Minn. Stat. § 271.10, subd. 1 (2024).

2.      The interests of justice do not require the exercise of discretionary review under Minn. R. Civ. App. P. 105.1, when there is no compelling reason for immediate

1

appeal and allowing the tax court to resolve the merits of the case best serves judicial economy and does not impair the relator's interests.

Writ of certiorari dismissed.

Considered and decided by the court without oral argument.

O P I N I O N

MOORE, III, Justice.

In this case, relator Hennepin County asks us to revisit our decision in *Beuning Family LP v. County of Stearns*, 817 N.W.2d 122 (Minn. 2012), which held that a tax court order denying a motion to dismiss a petition as untimely is not a final order under Minn. Stat. § 271.10, subd. 1 (2024), that is reviewable by petition for a writ of certiorari to this court. Hennepin County's request arises as part of its defense to a property tax petition[1] brought by respondent Hollydale Land LLC (Hollydale) challenging relator Hennepin County's assessment of seven years of deferred taxes that resulted from Hollydale's sale of a golf course. Before the parties tried the merits of that question to the tax court, however, Hennepin County moved to dismiss Hollydale's tax petition for lack of jurisdiction, arguing that the petition was untimely. The tax court denied Hennepin County's motion to dismiss, holding that the petition was timely and that the tax court did have jurisdiction over the case.

Hennepin County filed a writ of certiorari seeking review of the tax court's order.

---

[1]    Hollydale's petition was originally filed in the district court and was later transferred to the tax court.

Hollydale contends that we lack jurisdiction to review this case because Minn. Stat. § 271.10, subd. 1, provides for review of the tax court's "final order[s]," and under our decision in *Beuning*, an order denying a jurisdictional challenge is not a final order under Minn. Stat. § 271.10, subd. 1. 817 N.W.2d at 122. Hennepin County does not argue that *Beuning* is inapplicable to this case. Rather, the County asks us to overrule or limit *Beuning*, or in the alternative, exercise our discretionary authority to hear this case. For the reasons described below, we decline to do so, and we dismiss the writ of certiorari.

**FACTS**

Hollydale owned the Hollydale Golf Course in Plymouth, which is in Hennepin County. During Hollydale's ownership of this property, it was taxed under the Minnesota Open Space Property Tax Law ("Open Space Law"), Minn. Stat. § 273.112 (2024). The purpose of the Open Space Law is to encourage private development of outdoor, recreational, open space and park land by reducing the applicable tax burden. *Id.*, subd. 2. Property that qualifies under this law, including privately owned golf courses, is entitled to alternative valuation and property tax deferment. *Id.*, subd. 3. Under this program, the assessor must determine the value of such real estate "solely with reference to its appropriate private outdoor, recreational, open space and park land classification and value" rather than by the market value that the real estate would have if it were converted to another use with a higher value. *Id.*, subd. 4.

The Open Space Law requires, however, that the assessor also make a separate determination of the market value of such real estate. *Id.*, subd. 5. The assessor must calculate two values each year the property participates in the program: (1) the "Open

3

Space" value calculated under subdivision 4, and (2) the market value that would otherwise be charged under subdivision 5. *Id.*, subds. 4–5. Only the "Open Space" value is assessed each year, but the assessor must record on the property tax records the tax that would have been charged based on the market value calculation and the appropriate local tax rate applicable to such property in the taxing district. *Id.*

When a property no longer qualifies for valuation and assessment under the Open Space Law, the property is subject to deferred taxes in an amount equal to the difference between the tax determined using the property's market value, as it was calculated and recorded each year, and the tax assessed for each of the last seven years under the program. *Id.*, subd. 7. However, the market rate cannot exceed the actual bona fide sale price of the real property at an arm's-length transaction. *Id.*

Because of Hollydale's sale of the golf course on September 21, 2021, the property no longer qualified for alternative valuation and property tax deferment under the Open Space Law. On the date of the sale, Hennepin County mailed Hollydale notice of the deferred property taxes it owed for the last seven years during which the property had benefited from the Open Space Law. Under the County's calculation, the deferred taxes totaled $2,622,720.41. Hollydale paid the $2,622,720.41 but contests the County's calculation of the amount of the deferred taxes. In a petition filed on November 2, 2021, Hollydale argued that the County failed to cap the market value of the property at the bona fide sale price under Minn. Stat. § 273.112, subd. 7 of the Open Space Law, among other challenges to the assessed taxes. Hollydale sought a refund of the alleged overpaid tax based on the over-valuation of the property.

4

The County moved to dismiss Hollydale's petition, arguing that the tax court did not have jurisdiction to consider Hollydale's challenges to seven years of assessments because Hollydale failed to timely bring those challenges. According to the County's motion to dismiss, under Minn. Stat. § 278.01, subd. 1(c) (2024), Hollydale should have challenged the market value calculations of the property each year rather than waiting seven years and petitioning only after the sale of the property. Because Hollydale did not challenge the valuations each year, the County argued that Hollydale's petition is untimely, and the tax court therefore lacked jurisdiction.

The tax court denied the County's motion to dismiss, holding that Hollydale did not need to challenge the market value calculations until Hollydale left the Open Space program and was assessed the deferred taxes, under Minn. Stat. § 278.01, subd. 4 (2024) (providing "60 days from the date of mailing of the notice to initiate an appeal of the property's exempt status, classification, or valuation change" in certain circumstances). Therefore, the tax court held that the petition was timely and it had jurisdiction to hear the case. Hennepin County seeks certiorari review of that order.

**ANALYSIS**

The tax court is an independent agency of the executive branch of the government. Minn. Stat. § 271.01, subd. 1 (2024). Our review of tax court decisions is governed by Minn. Stat. § 271.10, subd. 1, which states that "[a] review of any final order of the Tax Court may be had upon certiorari by the supreme court upon petition of any party to the proceedings before the Tax Court." This statute only gives us jurisdiction to review "final order[s]" of the tax court. Before considering the merits of Hennepin County's appeal, we

5

must first determine whether the tax court's order denying Hennepin County's motion to dismiss was a "final order" under Minn. Stat § 271.10, subd. 1.

We addressed whether an interlocutory order denying a challenge to the tax court's jurisdiction is a "final order" for purposes of appeal in *Beuning Family LP v. County of Stearns*, and we determined that it is not. 817 N.W.2d 122, 128 (Minn. 2012). Hennepin County asks us to either overrule our decision in *Beuning* or limit *Beuning* to allow for an appeal here. In the alternative, Hennepin County asks us to exercise our discretionary authority to hear its appeal. Each argument is addressed in turn.

## I.

In *Beuning*, Stearns County moved for partial summary judgment on the grounds that a taxpayer's petition was untimely because it was not filed in the year in which taxes were payable and thus the tax court did not have jurisdiction to hear the case. *Id.* at 124. The tax court denied Stearns County's motion, and the county sought review in this court by writ of certiorari. *Id.*

In determining whether we had jurisdiction to hear the appeal, we noted that a writ of certiorari should address a decision of an inferior tribunal "which, if unreversed, would constitute a final adjudication of some legal rights" of a party. *Id.* at 126. Stearns County argued that the tax court's denial of its motion for summary judgment determined a fundamental right by compelling it to "take up the burden of litigation." *Id.* at 129 (citation omitted) (internal quotation marks omitted). We disagreed, holding that "no right— constitutional or otherwise—is violated when an administrative agency wrongly asserts jurisdiction over a party." *Id.* at 128.

In reaching this conclusion in *Beuning*, we noted that the tax court is not part of the judicial branch.  Rather, it "is an administrative agency of the executive branch, created by statute," and "[t]he doctrine of separation of powers dictates that our jurisdiction to review decisions of the tax court by certiorari is similarly limited by statute."  *Id.* at 126.  The statute governing the tax court establishes that, except for appeals to the supreme court allowed under the statute, "the Tax Court shall be the sole, exclusive, and final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state."  Minn. Stat. § 271.01 subd. 5.

The County acknowledges our holding in *Beuning* but asks us to reconsider our decision.  The doctrine of stare decisis directs that courts adhere to former decisions "in order that there might be stability in the law."  *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 406 (Minn. 2000).  This court has noted that it is extremely reluctant to overrule its precedent and requires a compelling reason to do so.  *State v. Lee*, 706 N.W.2d 491, 494 (Minn. 2005).  On the other hand, this court has also recognized that "*stare decisis* is not an inflexible rule of law but rather a policy of the law." *Johnson v. Chicago, Burlington & Quincy R.R. Co.*, 66 N.W.2d 763, 770 (Minn. 1954).  Elaborating on this principle, this court quoted Justice Cardozo: "[W]hen a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment."  *Oanes*, 617 N.W.2d at 406 (quoting Benjamin N. Cardozo, *The Nature of the Judicial Process* 150 (1921)).

In weighing these considerations, this court has commented that precedent should remain in place "where less injustice will result from the continuation . . . of an erroneous

theory, than will follow from its correction." *Naftalin v. King*, 102 N.W.2d 301, 304 (1960). Injustice can result from overruling precedent when people have relied on it to guide their conduct. 20 Am. Jur. 2d *Courts* § 132 (2024). These reliance interests are stronger in some fields of law than others. For example, property rights can vest in reliance upon property law decisions, so courts should be especially cautious in overruling such precedent. *State ex rel. Foster v. Naftalin*, 74 N.W.2d 249, 267 (Minn. 1956). We have contrasted the strong reliance interests at play in property and contract law with weaker reliance interests in procedural precedents. *See Johnson*, 66 N.W.2d at 770–71.

Despite the tax court origins of this case, the field of law at issue here is appellate procedure and this court's jurisdiction. The question is whether this court can review an interlocutory tax court order denying a jurisdictional challenge. Compared to other fields of law, procedural precedents like this raise relatively few reliance issues. *See id.*

On the other hand, this court has also held that the stability interests promoted by stare decisis are especially important in issues of statutory interpretation. In *State v. Lampkin*, this court noted that "[w]hen a judicial interpretation of a statute has remained undisturbed, it becomes part of the terms of the statute itself" and that "[t]he doctrine of *stare decisis* has special force in the area of statutory interpretation because the Legislature is free to alter what we have done." 994 N.W.2d 280, 288 (Minn. 2023) (alterations in original) (citations omitted). Although the reliance issues at stake here are relatively minor, the interest in stability in the law is relatively strong.

Under the principle of stare decisis, this court should not overrule *Beuning* unless there is a compelling reason to do so. Here, there does not appear to be a compelling reason

8

to overrule *Beuning*. The twelve years since *Beuning* have presented no cause to revisit the case. Over that period, we have relied on *Beuning* in two cases: *Metro. Sheet Metal* and *Guardian Energy*. *See Metro. Sheet Metal Journeyman & Apprentice Training Tr. Fund v. Cnty. of Ramsey*, 832 N.W.2d 844 (Minn. 2013) (applying *Beuning* to hold that a tax court order denying a motion to amend a petition was not an immediately appealable final order); *Guardian Energy, LLC v. Cnty. of Waseca*, 927 N.W.2d 1 (Minn. 2019) (applying *Beuning* to hold that a tax court order was not immediately appealable because the tax court had stayed entry of judgment pending a post order motion). Both *Metro. Sheet Metal* and *Guardian Energy* cited to and reaffirmed *Beuning*'s holding without questioning its reasoning. The County does not argue that these cases suggest that *Beuning* is inconsistent with the social welfare.[2] It is also worth noting that the Legislature has not amended Minn. Stat. § 271.10 since *Beuning* was decided. The Legislature is aware of this court's opinions and could have amended the statute if *Beuning* created problems with the administration of tax law.

The County argues that the facts here, rather than prior applications of *Beuning*, present a compelling reason to overrule *Beuning*. The County contends that applying *Beuning's* holding here would lead to an absurd result by requiring the County to litigate seven years of property taxes in one property tax petition. We do not find this to be a compelling reason to overrule *Beuning* that outweighs the value of stability in the law.

---

[2] Hennepin County argues that the *Metro. Sheet Metal* and *Guardian Energy* cases can be distinguished from *Beuning* such that their holdings could stand if *Beuning* was overturned. This argument is not a compelling reason to overturn *Beuning*.

9

Considering the arguments in their totality, we do not find any compelling reason to overrule *Beuning*, and we decline to do so.

Hennepin County also argues that, even if this court does not overrule *Beuning* in its entirety, it should limit *Beuning's* holding to cases brought to the tax court under Minn. Stat. § 278.14 (2024). That statute—the vehicle for the tax petition at issue in *Beuning*—allows taxpayers to petition the tax court for refunds of mistakenly billed taxes. Mistakenly billed taxes are defined narrowly and include only misclassification and certain mathematical errors. Minn. Stat. § 278.14, subd. 1. Tax petitions brought under that statute may look back two years. *Id.*

By contrast, the tax petition here was brought under Minn. Stat. § 278.01 (2024). This is the general statute for petitions to the tax court and provides for a broad range of challenges. Petitions brought under Minn. Stat. § 278.01 may include only one assessment date. Minn. Stat. § 278.02 (2024). Hennepin County contends that in cases brought under § 278.01, counties have a legal right not to have to defend more than one year of taxes at a time, and that *Beuning* did not consider that right. So, the County reasons, *Beuning* did not reject the argument that an order requiring a county to defend more than one year of taxes at a time finally determines a party's legal right. We disagree.

*Beuning* rejected the argument that a tax court order "that compels the defendant to take up the burden of litigation" is an appealable final order. 817 N.W.2d at 129 (citation omitted). *Beuning's* holding applies regardless of whether the "burden of litigation" involves one year of taxes or more. Further, we have since applied *Beuning* to a case

10

arising out of Minn. Stat. § 278.01 in *Metro. Sheet Metal*.[3] For these reasons, we decline to limit *Beuning* to tax cases brought under Minn. Stat. § 278.14. We hold that the order at issue is not an immediately appealable final order under Minn. Stat. § 271.10, subd. 1.

## II.

The County asks alternatively that we exercise our discretionary authority to hear this case. Rule 105.01 of the Rules of Civil Appellate Procedure provides that "[u]pon the petition of a party, in the interests of justice . . . the Supreme Court may allow an appeal from an order of the Tax Court . . . not otherwise appealable pursuant to Rule 116 or governing statute." We have exercised this discretion before in tax cases when doing so served the interests of justice and judicial economy. *See, e.g.*, *Tarutis v. Comm'r of Revenue*, 393 N.W.2d 667 (Minn. 1986) (reviewing a tax court order striking an affirmative defense even though it was not a final order under Minn. Stat. § 271.10). On the other hand, in other cases we have determined that the interests of justice and judicial economy may be better served by allowing cases to proceed to finality before the tax court. In *Metro. Sheet Metal*, for example, we concluded that there was no compelling reason for an immediate appeal of a non-final order because allowing the tax court to resolve the merits of the claim would avoid "piecemeal litigation" and would not impair any party's legal

---

[3] The County argues that because the tax court in *Metro. Sheet Metal* denied a motion to amend the petition to include more tax years—effectively dismissing the claims at issue about those tax years—the potential burden of defending against those claims was not directly before this court in that case. Even so, limiting *Beuning* as Hennepin County requests would conflict with our precedent in *Metro. Sheet Metal*, which relied on *Beuning*'s definition of "final order" to mean only orders that finally adjudicate "some legal rights" of the parties. *Metro. Sheet Metal*, 832 N.W.2d at 847 (citing *Beuning*, 817 N.W.2d at 126).

11

rights. 832 N.W.2d at 849.

The County argues that discretionary review would be in the interests of justice and judicial economy because a trial regarding seven years of valuations could take weeks, require expert testimony, and require information that may no longer be available because of the passage of time. Hollydale responds that all valuation appeals require expert testimony and that the possible unavailability of records does not prejudice the County because it is Hollydale's burden to overcome the presumption that the taxes are valid.[4]

Considering all these circumstances, we conclude that in this case, the interests of judicial economy favor allowing the tax court to resolve the merits of the claim to avoid piecemeal litigation. We also conclude that, as in *Metro. Sheet Metal*, allowing the tax court proceedings to continue would not impair any party's legal rights. For these reasons, we decline to exercise our discretionary authority to hear this appeal.

\* \* \*

Because the County advances no compelling reason to overrule or limit our decision in *Beuning*, we decline to do so. Under *Beuning*, an order denying a challenge to the jurisdiction of the tax court is not a final order under Minn. Stat. § 271.10, subd. 1. We lack jurisdiction to reach the merits of this appeal because the tax court's order is not a final order. We also decline to exercise our discretionary authority to hear the appeal,

---

[4] We also note that, in a hearing before the tax court, Hennepin County agreed that the assessor should have used the bona fide sale price in determining the deferred taxes owed on the property, rather than the market value assessed.

because the interests of justice and judicial economy are better served by allowing the tax court to first resolve the merits of the case.

## CONCLUSION

For all these reasons, we conclude that the tax court's order denying a motion to dismiss for lack of jurisdiction was not a final order. Accordingly, because we lack jurisdiction over a non-final order of the tax court, we discharge the writ of certiorari here and dismiss the appeal.

Writ of certiorari dismissed.